[Cite as *State v. McGhee*, 2012-Ohio-2799.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO                          :
                                       :      Appellate Case No. 24719
          Plaintiff-Appellee           :
                                       :      Trial Court Case No. 2008-CR-1731
v.                                     :
                                       :
ROBERT McGHEE                          :      (Criminal Appeal from
                                       :       Common Pleas Court)
          Defendant-Appellant          :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22ⁿᵈ day of June, 2012.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by R. LYNN NOTHSTINE, Atty. Reg. #0061560, Montgomery
County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O.
Box 972, 301 West Third Street, Dayton, Ohio 45422
          Attorney for Plaintiff-Appellee

THOMAS HAHN, Atty. Reg. #0086858, Post Office Box 341688, Beavercreek, Ohio 45432
          Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1}    Robert McGhee appeals from the trial court's denial of his motion for leave to seek a new trial under Crim.R. 33.

{¶ 2}    McGhee advances three assignments of error on appeal. First, he contends the trial court erred in finding statements in an affidavit in support of his motion to be inadmissible hearsay. Second, he claims the trial court erred in finding that the affidavit contradicted his own trial testimony. Third, he argues that the trial court did not fully consider whether there was a strong probability that the result would be different if a new trial were granted.

{¶ 3}    A  jury convicted McGhee of felonious assault and weapons-related charges in 2009. The charges stemmed from a planned drug transaction between McGhee and a person named Terry Martin. At trial, Martin testified that McGhee made arrangements to buy marijuana from him. According to Martin, McGhee pulled a gun during the transaction and shot him in the chest. For his part, McGhee testified that Martin and an unidentified man pulled guns on him and attempted to rob him. According to McGhee, he struggled with the unidentified man, whose gun discharged with a bullet striking Martin's chest.  On direct appeal, this court reversed and remanded for merger of two felonious-assault convictions as allied offenses of similar import. In all other respects,  the judgment was affirmed. *See State v. McGhee*, 2d Dist. Montgomery No. 23226, 2010-Ohio-977.

{¶ 4}    In May 2010, McGhee moved for leave to file a motion for a new trial under Crim.R. 33. In support, he provided a sworn and notarized statement from a person named

Georneesha Allen. Her July 13, 2009 statement reads:

> I am Mike's [Michael Jenkins's] former girlfriend. I have personal knowledge that Quan [Delaquan Myers], Mike, and Turk [Terry Martin] were all involved in the plan. The plan was for Quan, Mike, and Turk to set "Rob" [Robert McGhee] up to be robbed. (They used the name Rob. I didn't find out until later that it was the Rob I knew as TT's [Tonea Pope's] father). They (Quan, Mike, and Turk) said there was to be $1300 to be split three ways. But they (Quan & Mike) later said Turk wanted to be greedy and do the robbery himself. When Rob met Turk at the apartment they wrestled over the gun and the gun went off. They (Quan and Mike) said there were only two bullets in the gun. Turk was shot. I had knowledge the gun used in the shooting to be a large black gun kinda mack something. I had seen the gun prior to the incident at my house. I don't know who the gun belonged to.
>
> Quan and his cousin (I don't know his name) were at my house and were talking about the incident (shooting) – maybe one to two days after.
>
> After the shooting, Quan & Mike had to keep meeting Turk's brothers at NW Plaza on Siebenthaler regarding the shooting because Turk's brothers were upset. They were under the impression that Quan and Mike had done the shooting. So they told them that Rob had done the shooting.
>
> > They told me they just dropped Turk off at the hospital and was trying to break out [of] the parking lot because they were fearful of what the police might do because they had drugs on them when they dropped Turk off at the hospital. I have no knowledge of them doing something

like this before. They never really lied to me. But you know in this situation they could. They were fearful of the police because they had drugs on them.

We meet with the appellate attorney tomorrow morning at 10 a.m. Quan and Mike had fallen out I think over some money. (They had got back cool for a little bit. But now they are right back at the same point).

While Quan and Mike were not getting along, Quan kept calling me for them to meet up with each other. I was talking to Mike and he would just call and talk to me about the shooting when they were first going to court and stuff.

I believe the blue Lumina that was used to take Turk to the hospital to be Mike's old girlfriend's car.

I know that Robert, Quan, and Mike were not friends with each other and they did not set Turk up to be shot.

I know that there was more to the story and I told them that; but that's the story they told. I've heard different things from some other people, too.

I've known Turk, Quan, and Mike for many years. And I also told Turk he got what he deserved 'cause it wouldn't have happened, he shouldn't have been in the streets. All three of their mothers have told them the same thing over and over. They still have not learned a lesson.

I have personal knowledge that currently Turk is back to selling drugs even in his condition. Quan just got out of jail. Mike is in jail waiting to be sent somewhere. None of them were raised like this and need to be in the streets. I don't understand it. Especially Turk he was smart in school, graduated from

Miami Valley CTC and was always spoiled and got whatever he wanted.

(Doc. #3 at Exh. A).

{¶ 5} In support of his motion, McGhee also provided his own May 27, 2010 affidavit. It reads:

1. My name is Robert McGhee. I am currently incarcerated at London Correctional Institute in London, Ohio. A jury found me guilty of felonious assault, carrying a concealed weapon and having a weapon while under disability on January 8, 2009.

2. Since the day of the shooting, I have maintained that I was set-up at the drug deal by Terry Martin and others including Delaquan Myers and Mychael Jenkins.

3. Despite my diligent search for exculpatory evidence and/or corroborating witnesses, at no time prior to the jury's verdict was I ever made aware of Georneesha Allen's identity or her knowledge that I was set-up.

4. I did not become aware of Ms. Allen's identity and knowledge until July 2009 when my mother informed me that she had spoken to Ms. Allen and had obtained an affidavit from her. Because Ms. Allen's identity and knowledge were not made known to me until over 120 days after I was convicted, I was unavoidably prevented from filing a motion in a timely fashion.

(Doc. #3 at Exh. B).

{¶ 6}  Finally, McGhee supported his motion with a May 28, 2010 affidavit from attorney Lucas Wilder. It states:

1. My name is Lucas Wilder and I am a licensed attorney in the State of Ohio.

2. I was appointed to represent Robert McGhee at the trial level after his first trial was declared a mistrial. On January 8, 2009, Mr. McGhee was found guilty of felonious assault, carrying a concealed weapon and having weapons while under disability.

3. During my representation of Mr. McGhee at the trial level, I presented a theory at trial that Mr. McGhee was set-up to be robbed at a drug deal by the victim (Terry Martin) and his two accomplices, Mychael Jenkins and D[ela]quan Myers. Despite my diligent searches for exculpatory evidence and/or corroborating witnesses, at no time prior to the jury's verdict was I ever made aware of Georneesha Allen's identity or her knowledge that Mr. McGhee was set-up.

4. I did not become aware of Ms. Allen's identity and knowledge until July 2009 when Mr. McGhee's mother contacted me and delivered to me an affidavit signed by Ms. Allen on July 13, 2009.

(Doc. #3 at Exh. C).

**{¶ 7}** Relying on the foregoing affidavits, McGhee moved for leave to seek a new trial based on newly discovered evidence. He argued that he had been unavoidably prevented from filing a timely motion within 120 days of the jury verdict. If leave were granted, McGhee requested seven days to file an actual new-trial motion. (*Id*. at 5-6).

**{¶ 8}** In a July 15, 2010 decision, order, and entry, the trial court held that it lacked jurisdiction to rule on McGhee's motion for leave because a direct appeal to the Ohio

Supreme Court was pending. (Doc. #5). Thereafter, McGhee renewed his motion for leave to seek a new trial on September 27, 2010. (Doc. #6). On October 20, 2010, the trial court again held that it lacked jurisdiction to consider McGhee's motion because an appeal was pending. (Doc. #8). On January 25, 2011, McGhee again renewed his motion for leave to file a new-trial motion. (Doc. #9). The following day, the trial court purported to *sustain* the motion. Its ruling stated: "Defendant's renewed Motion for Leave to File Motion for New Trial Based Upon Newly Discovered Evidence is granted. Defendant's Motion filed May 28, 2010 is deemed renewed and filed as of the date of this Order." (Doc. #10). The May 28, 2010 motion the trial court referenced, however, was simply McGhee's original motion for leave to file a new-trial motion. Therefore, it appears that the trial court did not actually grant McGhee leave to file a new-trial motion. Instead, it simply accepted, as filed, his renewed motion for leave.

{¶ 9}    On February 11, 2011, the State filed its opposition to McGhee's motion for leave. (Doc. #11). Therein, the State claimed McGhee had failed to demonstrate that he had been unavoidably prevented from seeking a new trial within 120 days of the jury verdict. The State further argued that the motion for leave should be denied, in any event, because "it is obvious that the alleged new evidence is not sufficient to warrant a new trial in this matter." (*Id*. at 2). In reply, McGhee reiterated his argument about being unavoidably prevented from discovering Georneesha Allen's identity and information. He supported this claim with another affidavit. (Doc. #12). Regarding the State's argument about the potential merits of a new-trial motion, McGhee asserted that such an argument was premature and that the only relevant issue was whether he should be granted *leave* to move for a new trial. (*Id*. at 2). McGhee proceeded to address the merits of the new-trial issue, however, "in case [the trial court] rule[d] on both the motion for leave and the merits decision in one." (*Id*. at 3).

{¶ 10}  The trial court overruled McGhee's motion for leave to move for a new trial in a June 16, 2011 order. (Doc. #13). The  trial court assumed, arguendo, that McGhee had been unavoidably prevented from filing a new-trial motion within 120 days of the jury verdict. (*Id.* at 3).  It then proceeded to the merits of the new-trial issue, reasoning: "It is unnecessary to grant leave to file a motion for a new trial if the new evidence offered does not merit a new trial." (*Id.*). The trial court concluded that McGhee's new evidence, to wit: Georneesha Allen's sworn statement, did not merit a new trial for two reasons: (1) her statement that she heard about a plan to set up and rob McGhee was inadmissible hearsay and (2) her statement contradicted McGhee's trial testimony. (*Id.* at 3-4).

{¶ 11}  On appeal, McGhee does not challenge the trial court's denial of his motion for leave to seek a new trial on the basis that an actual new-trial motion would lack merit. Therefore, we have no occasion to decide whether the denial of leave to file can also be  a determination of the merits of the motion. *Cf. State v. McConnell*, 170 Ohio App.3d 800, 2007-Ohio-1181, 869 N.E.2d 77, ¶ 18-22   (2d Dist.) (finding that the trial court erroneously conflated the defendant's motion for leave to seek a new trial with his actual right to a new trial, which was not yet before the court). McGhee's arguments focus solely on the trial court's conclusion that Allen's sworn statement failed to meet the test for granting him a new trial and we confine our ruling to that issue.

{¶ 12}  In his first assignment of error, McGhee challenges the trial court's finding that crucial portions of Allen's sworn statement were inadmissible hearsay. Specifically, he contends Allen's statement about hearing of a plan to rob him was admissible under Evid.R. 803(3) because it showed "the men's intent, plan, motive, and design regarding their set-up[.]" The trial court analyzed and rejected this argument below, reasoning:

Under Evid.R. 803(3), * * * "the testimony sought to be introduced must point towards the future rather than the past." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 21, 514 N.E.2d 394, 398. Ms. Allen's affidavit states that she learned some initial details of the shooting from the victim and his friends one or two days *after* the incident occurred. In subsequent days, Ms. Allen learned more about the alleged plan to rob Defendant. Moreover, all of the statements in Ms. Allen's affidavit relate to an alleged plan that was already executed and do not reflect "the declarant's then existing state of mind, emotion, sensation, or physical condition." Rather, the statements all reflect the declarant's "state of mind, emotion, sensation, or physical condition" at some point in the past. Therefore, her potential testimony is not admissible under the hearsay exception of Evid.R. 803(3). As such, without her testimony and without any other offered evidence, Defendant cannot show that there is "a strong probability that the result of the trial would be different if a new trial were granted." * * *.

(Doc. #13 at 3-4).

{¶ 13} Despite McGhee's attempt to parse Allen's statement, we agree with the trial court that Evid.R. 803(3) would not allow admission of the crucial aspects of Allen's statement. McGhee reads Allen's statement as indicating that she was told beforehand about a plan to rob him. There is no direct assertion that Allen was informed of such a plan before the shooting. In any event, by McGhee's own admission, Allen did not hear about what allegedly happened during the shooting until after the event. Because most, if not all, of Allen's statements about what she heard others say related to past events rather than the future,

Evid.R. 803(3) did not apply to them. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 108 (recognizing that statements under Evid.R. 803(3) must concern a future event rather than past conduct). Absent those allegations, the trial court correctly found that McGhee could not establish a strong probability of a different result if a new trial were granted. Therefore, a new trial was not warranted. *State v. Petro*, 148 Ohio St. 505, 508, 76 N.E.2d 370 (1947). The first assignment of error is overruled.

{¶ 14} In light of the foregoing conclusion, we need not decide whether the trial court also correctly found a new trial unwarranted because Allen's affidavit contradicted McGhee's testimony. Our resolution of the first assignment of error means that McGhee is not entitled to a new trial regardless of any disposition of McGhee's second assignment of error. It is moot. *See* App.R. 12(A)(1)(c).

{¶ 15} In his third assignment of error, McGhee claims the trial court "did not completely evaluate whether there is a strong probability that the result of the trial would be different if a new trial were granted." His only argument, however, is that the trial court should have found the allegations in Allen's sworn statement admissible under Evid.R. 803(3) and should have considered them. Taking Allen's statement into consideration, he contends a strong probability exists that a new trial would produce a different result.

{¶ 16} In our resolution of the first assignment of error, we found no error in the trial court's treatment of the Evid.R. 803(3) issue. Therefore, the trial court did not err in evaluating the "strong probability" issue without taking Allen's statement into consideration. The third assignment of error is overruled.

{¶ 17} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

GRADY, P.J., and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck
R. Lynn Nothstine
Thomas H. Hahn
Hon. Mary L. Wiseman